## Gearhart et al. v. Lee-Clay Products Co. et al.

June 20, 1941.

W. B. White and Lewis A. White for appellant.

Lester Hogge, James Clay and Robert H. Winn for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

In an action by the appellant, George H. Gearhart, against the appellee, Lee-Clay Products Company, and its stockholders and directors to compel the issuance by the corporation of a stock dividend of $100,000 and to allot to appellant $23,296 thereof the trial court sustained a demurrer to the petition and dismissed it. This appeal follows.

The allegations of the petition as amended disclosed in substance, the following state of facts. Prior to February, 1925, the Clearfield Lumber Company, a corporation, was engaged in a lumber operation in Rowan and adjoining counties. It owned in fee 26,000 acres of land and the mineral rights in 13,000 acres. The timber on the land having become exhausted, on February 2, 1925, the Clearfield Lumber Company conveyed the properties · to the Clearfield Clay Products Company (name later changed to Lee-Clay Products Company) for a consideration of $50,000. The capital stock of the lumber company consisted of 1,000 shares of the par value of $100 each and was owned as follows:

| | |
|---|---|
| George H. Gearhart | 119 shares |
| Guy Snyder | 119 shares |
| A. W. Lee | 209 shares |
| W. B. Townsend | 208 shares |
| Estate of John W. Wrigley | 208 shares |

The stock of the Clay Products Company was subscribed for by the stockholders of the lumber company in the same number of shares, each, which they held in the lumber company, the effect of the transfer being merely to change the ownership of the lumber company to the new corporation. The further allegation appears that prior to this change many thousands of dollars had been expended in testing the lands in question for minerals and that it had been definitely determined that underlying this land were valuable deposits of fire clay and that it was known to all the stockholders that the land was worth far more than $100,000 over and above the consideration of $50,000 paid to the lumber company.

On August 17, 1925, at a stockholders' meeting at which all of the directors and stockholders, except M. C. Crosley, who had in his name at that time 3 shares actually owned by appellant, George H. Gearhart, which had been transferred for the purpose of qualifying Crosley as a director, appellees, M. S. Bowne, John M. Palmer,

M. C. Crosley and C. P. Duley, became employees of the Clay Products Company and subscribed to certain capital stock of the company for which they gave their notes. Certain qualifying conditions were attached to the ownership of the stock in the hands of these new subscribers.

A portion of the resolution adopted at the last mentioned meeting was as follows:

"Thereupon it being conceived that the development of this corporation's clay properties in Kentucky, since its acquisition of them by purchase from the Clearfield Lumber Company, had demonstrated possible unexpected values in them, accompanied by a possible profit and value over and above what had been paid for them; and it being conceived that at some time in the future, if the expectations of the Company were realized, there might be declared a stock dividend because of the appreciated value of said properties, it was upon motion, duly seconded, all voting in the affirmative, resolved that when, if ever, the said condition should justify a stock dividend of an hundred thousand dollars, that then the same should be allotted and apportioned in the following way, to-wit:

| | |
|---|---|
| "To M. S. Bowne | $ 5,000.00 |
| To John M. Palmer | 2,000.00 |
| To M. C. Crosley | 1,000.00 |
| To C. P. Duley | 1,000.00 |
| To A. W. Lee | 19,019.00 |
| To George H. Gearhart | 23,296.00 |
| To W. B. Townsend | 18,928.00 |
| To the estate of John W. Wrigley | 18,928.00 |
| To Guy Snyder | 10,829.00 |
| Total | $100,000.00" |

At that meeting the capital stock of the company was increased from $200,000 to $400,000 and was later increased to $500,000. The appellant, George H. Gearhart, subscribed only to a very limited amount of the increased capital stock while the other stockholders, in conjunction of several new stockholders, subscribed for the balance of the increased amount. Most of the present stockholders are the estates of five original stockholders or are members of their families.

On August 5, 1931, the contract between Bowne, Palmer, Crosley and Duley and the corporation, as embodied in the resolution of August 17, 1925, was modified at a meeting of the directors and stockholders but no attempted modification to the distribution of the anticipated stock dividend of $100,000, the modifying resolution reciting that "the said agreement of August 17, 1925 shall be and is modified and altered as is herein set forth and no more."

It was further alleged that prior to July 12, 1937, appellant, Gearhart, was insisting that the stock dividend provided for in the resolution of August, 1925, should be made and that on the last mentioned date a resolution was adopted at a meeting of the board of directors and stockholders reciting that the board of directors did not believe that the clay properties of the company to which the August, 1925, resolution referred had appreciated in value since the date of their acquisition and that the expectations in respect thereto had not been realized and that it was for the best interests of the corporation that the August, 1925, resolution be rescinded and cancelled, which was therefore done.

The petition contained several elaborate allegations to the effect that the properties of the lumber company at the time they were transferred to the Clay Products Company had been prospected to a sufficient extent to apprise the owners of the property of the valuable mineral deposits and of the fact that the properties were in fact worth more than $100,000 over and above the price paid to the lumber company and that the stockholders at the time of the August, 1925, resolution were all fully conversant with these facts. It was further alleged that the properties of the corporation were of a reasonable, fair value of at least $1,000,000.

Many reasons are set up and elaborately argued in the brief for appellee to support the judgment of the trial court in sustaining the demurrer and dismissing the petition but we find it unnecessary to consider most of the questions argued since one fatal insufficiency in the allegations of the petition clearly justified the trial court's action, that insufficiency being a failure to allege a financial condition of the corporation sufficient to justify the issuance of a $100,000 stock dividend. Even though the other facts alleged manifested a right on ap-

pellant's part to compel the declaration of the stock dividend and the apportionment of $23,296 thereof to him, necessarily it was incumbent on him to demonstrate also that the financial condition of the corporation was such as would permit or justify the dividend.

The authorities seem to be unanimous in holding that a stock dividend is properly payable only from surplus and that in the absence of a surplus justifying it such a dividend may not be lawfully issued. 18 C. J. S., Corporations, Section 466, p. 1110, Fletcher Cyclopedia Corporations, Volume 11, Section 5361, and cases cited in Words and Phrases, Perm. Ed., Volume 40, page 177. The cited section of Fletcher states the rule as follows:

> "As in the case of a cash or property dividend, a stock dividend can only be issued to represent surplus profits. The assets of the corporation, over and above its debts, etc., must be equal to the amount of the new stock added to the amount of the original capital stock."

The only allegations of the petition having any bearing on the financial condition of the corporation with reference to its right or power to issue a stock dividend are the allegations that the capital stock of the corporation is $500,000 and that its properties are worth $1,000,-000. This allegation falls far short of demonstrating such a financial condition as might justify the directors in issuing a stock dividend if they so desired. It was essential that the petition allege that the corporation had a surplus sufficient to justify the issuance of the dividend. From the allegations of the petition it may be that the corporation owes more than the difference between the $500,000 capital stock and the alleged value of its properties, $1,000,000.

If the appellant had manifested in all other particulars a right to the relief sought by him, a question which it is not necessary for us to decide at this time, he failed to manifest by his pleadings a financial condition of the corporation which would justify the directors in issuing the stock dividend which he seeks to compel them to issue.

Judgment affirmed.

The whole court sitting.